Good morning, Your Honors. Robert Doody for the Brendan LaBatte. May it please the Court. The case before you today from the district court is fairly straightforward. Does the federal court have jurisdiction to determine whether or not an Indian tribe, specifically the Sisseton Wahpeton Wiyate, can exercise criminal jurisdiction outside of Indian country? Well, I filed an opinion on tribal sovereignty in this kind of jurisdictional question last Friday. Thirty-five pages long, and I can tell you this is nothing but, this is not in the least bit straightforward. I agree. I was trying to make the argument that it was straightforward. But, um, so Well, and then, I mean, because my question is going to be, what if we agree with Kelsey? Then you agree with Kelsey, and we might have to take it further. Well, is the case over? What do we do if we find Kelsey? You say the only case on board, but it's wrong, from the Sixth Circuit. Right. Kelsey v. Pope. Yeah. And so, is the case over if we think Kelsey is persuasive on these extra-territorial criminal jurisdiction questions? I'm not so sure, because Kelsey is It's not either. That's why it's a very serious question. No, Kelsey, I think, is different. It's a different tribe. It has a different history. The contours of carving out the jurisdiction there are very different, and this is where I think the circuit court got it wrong. The circuit court didn't interpret What facts would matter? For instance I take the, when Kelsey cites Duro and Wheeler and quotes from the 1939 opinion of the Solicitor of Interior on the, basically, there's no question that tribals had extra-territorial jurisdiction vis-a-vis their members, which we have here. Now what, if we agree with that, and I think, frankly, it's almost irrefutable from many, from the research I have done at great length. Okay, now what's left? What facts would make this different? Well, first, the crime occurred just across the reservation on fee land, but land that was owned by the tribe. In this case, it was on fee land totally not owned by the tribe nor held in trust. Also in Kelsey, it was a serious crime, and I believe Kelsey limited its decisions to sort of serious crimes that affect the internal runnings or operations of the reservation. Some of its holdings aren't limited. Some of its holdings are not limited. Indian tribes possess the inherent sovereign authority to try and punish members on the basis of tribal membership. That's one of the holdings of the case, Kelsey, right? Well, if that is the holding that is adopted, one of the questions then is where does the jurisdiction stop? Is the jurisdiction for the Sissanawapan Oyate under 1867 treaty? That opinion of the solicitor of interior, that the original sovereignty of an Indian territory of the tribe cannot be challenged. That Indians friendly to the United States acted to punish their members for depredations committed against whites outside of the Indian country is a matter of historical record. So reading that then, a tribal member of the Sissanawapan Oyate who commits a crime in Florida can be punished? Yeah. Yes. I disagree with that. I think that there's a... This is all subject to Congress, but you have to find an act of Congress or something that's the equivalent of an act of Congress under federal law to wipe out this ancient, well-settled tribal authority over its members to exercise criminal and civil jurisdiction. Right, Judge. And I think, quoting from DeCotto, DeCotto limits this jurisdiction. What? DeCotto versus the Tenth Judicial Circuit. This is on document 30, page 103 of my brief to the trial court. Is it in your appellate brief, counsel? It's referred to in my appellate brief. Oh, deCotto. Yeah. And it states, but as a historical circumstance may clear, this was not because the tribe wished to retain its former reservation undiminished, but rather that because the tribe and the government were satisfied that the retention of allotments would provide an adequate fulcrum. That's a reservation diminishment case. Right. But it further says, Judge, in such a situation, exclusive tribal and federal jurisdiction is limited to the retained allotments. To what? In such a situation, exclusive tribal and federal jurisdiction is limited to the retained allotments. So the Supreme Court in DeCotto was limiting that. That's not the — okay. I know what that's referring to, and it's not — it doesn't help on this issue. Okay. Well, we would still say and argue, if the Circuit's going to adopt the Kelsey v. Pope decision, we have a lot more questions ahead of us. Can I ask you a preliminary question, which is, I wonder whether we even have to reach any of this because of exhaustion of remedies or lack thereof, which is, there's that whole line of cases from the Supreme Court that says, when you're challenging tribal jurisdiction, you really need to raise it in the underlying action. And here you're arguing that there's no basis for the tribe trying him, but you never raised it to any of the tribal courts, from what I can see. No. There's two tribal court decisions that specifically talk to and assert that they have jurisdiction over their tribal members within the 1867 boundaries, two decisions. Plus, there's a statutory framework. Taking this case up through the tribal court process would be essentially futile at this time because the tribe has already ruled on it and has made a statutory and a judicial decision. But you do agree — I mean, futility aside, it was not raised in the underlying criminalization? I think it was raised in the — there was a petition to dismiss, but it wasn't furthered. Okay. What about mootness? I wanted to ask about that as well. Do we — do we have mootness because of actions that were taken in the underlying case and by the — the fact that they were dismissed? No. I think that there's two exceptions to the mootness doctrine here. One is the voluntary cessation rule. The DUI was only dismissed after the lawsuit was filed. Plus, the reviewability yet escaping review question that this could come up again and again and again. On voluntary cessation, I kind of went down the rabbit hole. I wonder about that because they relied on a tribal resolution. And we have a series of cases that says when you're talking about a statutory issue or a legal issue where it's actually memorialized, that the — that the standard flips. And you have to show that it's — it's — essentially that there's a high likelihood that the statute or resolution is going to be repealed. Does that change the analysis at all? Well, first, Your Honor, I think the resolution you're talking about is the 2019 resolution by the tribe, which said they won't cross — you know, if you get a DUI in Indian country and a DUI on fee land, the tribe won't pursue it. In this situation, it was just a DUI. There was not a DUI charged out by the state as well. Okay. With that, I'll reserve my time. Thanks. Very good. Thank you. Mr. Billion. Thank you, Your Honor, and good morning. For the record, my name is Tim Billion from Robbins-Kaplan, appearing on behalf of the appellee and defendants, the tribal officials. This case was properly dismissed for all the reasons stated by the district court below. And even if this complaint had contained a private right of action that could apply to a tribe or tribal officials, there are other reasons that the district court has other constitutional and prudential limits on federal jurisdiction that prevent advisory opinions on tribal court jurisdiction. And those would require dismissal as well. So all of those principles taken together give the district court and give this court multiple options to reach the same result, which is that this action needs to be  Can I ask you about exhaustion right off the bat? Because you heard opposing counsel talk about futility. I'm pretty sure it was not raised before the tribal court. He said it might have been raised in a motion to dismiss. First of all, what's your understanding of the record on that? And second, would it have been futile to raise it to the tribal court? I'll answer those in the same order asked. So it was, Mr. Labatt made a motion to dismiss to the tribal court, but that motion wasn't made to dismiss based on lack of jurisdiction. It was made to dismiss based on the concurrent prosecution memo that the tribe, the tribal counsel had issued. So when you look at it in that way, Judge Strauss, Mr. Labatt actually won in the tribal court. He brought a motion to dismiss, and that's in the appellant's appendix. And the tribal prosecutor said not yet because he hasn't been convicted or sentenced yet. And then after he was convicted and sentenced, that's when the tribal prosecutor dismissed the DUI charge. So that case, that charge has been disposed of on Mr. Labatt's own motion, which I think is important when you're talking about futility and exhaustion of remedies. On one other point on exhaustion of remedies, this can no longer be recharged under tribal law because tribal law limits criminal charges within one year of the incident. So not only do we have a concurrent prosecution memo that the tribal counsel in its exercise of its sovereignty said, here's how we're going to handle with the situation with concurrent jurisdiction, but you've also got a tribal statute that would prevent recharging. That's a word to mootness, doesn't it, that the case is moot? What about futility in terms of in terms of raising it? Because he says there's two cases from the tribal court that that say they exercise jurisdiction in this, in these circumstances. Yeah. And futility, I think, has a couple of problems with that argument. The first being that the latest tribal court decision on this topic was in 2016. That is before the concurrent prosecution memo. So, in fact, tribal court has never addressed the concurrent prosecution memo and how that affects the interactions between state and tribal jurisdiction. So that would still be unaddressed. And in any event, even if that had been addressed by the tribal Supreme Court, there's a litany of cases that say that tribal courts need to be the first to rule on their own sovereignty. That's not a jurisdictional matter. That's a matter of comedy. It's a prudential rule. But it's important because the tribal court, as a sovereign court, needs to be the first one to offer any opinion on its own. What if there's 50 cases, including from the tribal Supreme Court, has already spoken on saying, yeah, we have jurisdiction in these circumstances? Does somebody still have to raise it or does that become futile? I think you'd have to raise it. I think you'd have to raise it at the tribal trial court. I think you'd have to raise it in the tribal court here, the Supreme Court. And then once you get a final decision, potentially you could bring that into federal court. You couldn't here because it would be moot and there'd be no Article III jurisdiction. But that would be the correct route to pursue the issue. Now, you referred to the concurrent jurisdiction resolution. Does it apply just to South Dakota or other states, too? I believe it just is. Well, I'd have to look back at the text of the memo. But I believe it's within the jurisdiction within South Dakota. So it's South Dakota in the tribe, not even an adjoining state. That would be my understanding. And South Dakota is a public law 280 state, right? I think it's not, actually. I think it's not. I do want to address briefly the manner in which the district court dealt with this issue. And I think the district court had focused on the claims that are actually pleaded in the amended complaint. Count 1 was for a violation of the Fourth Amendment and the Indian Civil Rights Act. Count 2 was for a violation of the Fourteenth Amendment and the Indian Civil Rights Act. And then the prayer for relief only sought declaratory and injunctive relief. And those are the claims that were before the district court as they were pleaded. And neither count there states a claim that has a private right of action against a tribe. It's well settled that the Constitution does not apply to tribes. And it's well settled that the only remedy for an ICRA violation against a tribe is a habeas corpus claim. So that's what the district court confronted. And I think that's. I'm not sure about the first proposition there. I mean, I don't think Santa Clara Pueblo is relevant at all here. I think we're talking Duro and Kelsey and Wheeler. Maybe the case Bellara, another case. And they all make it clear that this is all a question of federal law. So the notion that there's no jurisdiction is dubious to begin with. So there is federal question jurisdiction if it's a well pleaded federal claim. I agree with that, Your Honor. And I think that. So the district court got that wrong? I don't think I don't think the district court got that wrong. And that's why I wanted to address this issue, because I think the core of it gets to the cases that you just talked about, Judge Loken. But there is also Crosby-Fox from this court, and I believe 2022, that says if there is what would ordinarily be a 12B6 argument that the claims fail on the merits. Right. But where they are clearly precluded by established law, then there's no private right of action that would confer federal subject matter jurisdiction. So we did scale that back, though, in NAACP. We said that it's where it's like obvious as a matter of law that there wouldn't be one. Yeah. And I think we meet that threshold here, Your Honor. I mean, it's just the two claims that are in the complaint, the Fourth Amendment, Fourteenth Amendment and ICRA, just don't state claims here under well settled law. And that's why I think the district court handled it the way it did. I think it also, Your Honor, could have gone the mootness route, the tribal exhaustion route, or it could have confronted the issue of extraterritorial jurisdiction, which is the cases that you raised, Judge Loken. But in any event, there's been no identifiable error in the district court's analysis, and that's why the court, one of the reasons the court can affirm. And I do want to talk briefly, you know, Judge Loken, we've, you raised the issue of Kelsey and some of the cases that preceded it, Duro and Wheeler. We obviously think that Kelsey is a correct decision, but I don't think that this court needs to go so far as even reaching that issue, because in the first instance, that issue should be presented to the tribal court system. The question of whether or not the district court is going to be able to do that, that is a question of the tribal court's jurisdiction, and not just its jurisdiction, but its own interpretation of its constitution, which was passed, I believe, and federally approved in 1966, which was well after the acts of disestablishment in, that were the basis of Dekotu. I believe that that issue needs to be presented as a matter of tribal law and the scope of tribal jurisdiction over its own members, because the tribal's constitution comes from the tribal members themselves. And I think that's also a key distinction between some of the other cases that opposing counsel has cited, National Farmers Union being one example of them, because here we're talking about jurisdiction over members, not over nonmembers. And that's why we get to the Kelsey case, but ultimately, Your Honors, that should be left to the tribal court in the first instance. I don't think we've consistently done that. Perhaps not, Your Honor. And I know that there are some instances where, but I think that the current rule, in particular, after this Court's decision in WPX v. Jones, I think, Judge Benton, you may have even been on that panel. That's the rule, and that's what should happen. That's what should happen here. I have a minute left for any other questions. If the Court has any otherwise, I will see the rest of my time. If there's this 12B6 v. 12B1 issue, I mean, I don't understand that from the briefs. If there's federal question jurisdiction, if there is a well-pleated Fourth Amendment claim, I don't think the general notion that Pueblo is cited for applies. And I have two responses to that, Your Honor. First is there's not a Fourth Amendment violation that's actually pleaded in the complaint. Well, that's the basis for the, I mean, the whole jurisdictional pitch here I don't understand. Well, Mr. Labatt was arrested in tribal housing by tribal police officers after resisting arrest. So I don't know where the illegal detention would come from because, you know, he wasn't arrested on the street by his car. I do know that I'm out of time. I just want to briefly finish answering your question. I think that the Crosby-Fox case really illustrates well how a 12B6 argument can become a 12B1 argument where the claim is clearly precluded under established law, and that's what we have here. So I think that's what the district court did when it dismissed for lack of jurisdiction. Thank you, Your Honors. For rebuttal. Counsel, I just wanted to make sure you got a chance to cover this, but I heard for the, I didn't see this anywhere in the briefing, but the one-year bar on re-prosecution, if there is in fact a one-year bar, why is the case not moved? That takes out your voluntary cessation argument because presumably there's a law on that within the tribe. From my understanding, it was because he was incarcerated, so that did not necessarily apply. Okay. Since he was incarcerated in the state penitentiary during the pendency of this. So your view is he could still be re-prosecuted today? It was without prejudice from my understanding. But, judges, I just did want to raise one issue. I think that jurisdiction or tribal court jurisdiction is a federal question under 28 U.S.C. 1331, and I'll cite to the case Gaming World International v. White Earth Band of Chippewa Indians. Judge Loken, I believe you were on the panel for this one. And it states, it is well established that the scope of tribal court jurisdiction is a matter of federal law. Furthermore, the existence of tribal court jurisdiction itself presents a federal question within the scope of 28 U.S.C. 1331. So I believe that there is federal question of jurisdiction. What case were you? That is Gaming World International v. White Earth Band of Chippewa Indians. It's not in your brief, but it's the other side brief, right? Yes, it's in the other side brief. Right. Go ahead. 1317 F3D 840-852. Also, judges, I filed a Rule 28J to have this added to my brief, along with National Farmer Union, which states, quote, because petitioners contend that federal law has divested the tribe of its aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from tribal court interference. As found, a federal court may determine under Section 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction. And with that, I cede my time. But disestablishment or diminishment of the reservation doesn't eliminate the historic tribal authority to prosecute members for misdeeds off the reservation? Well, I think there's a difference between disestablishment and diminishment. Pardon? There's a difference between disestablishment and diminishment. How much difference in degree, not kind? Well, with that, Your Honors, we'd ask that. The Yankton Sioux endless litigation over there, Checkerboard Reservation, never did get to disestablishment. Had diminishment cases one after another for a while. All right. Well, Your Honors, I'd ask that you reverse the circuit court. Thank you very much. Thank you, Counsel.